IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.  : | CRIMINAL NUMBER 21-40-5 |
| : | |
| ROBERT MORSS : | |

### DEFENDANT'S RESPONSE TO THE GOVERNMENT'S
### MOTION FOR PRE-TRIAL DETENTION

Defendant Robert Morss, by and through his undersigned attorneys, hereby opposes the government's Motion for Pre-trial Detention and respectfully moves the Court, pursuant to 18 U.S.C. §§ 3142(e) and 3145(b), to release him pending trial. The rule of equity weighs in favor of granting Mr. Morss's pretrial release in light of his lack of criminal history, exemplary military service, and strong family support. Mr. Morss is neither a flight risk, nor a risk of danger to his community. Monitoring, along with other conditions of release, reasonably will assure Mr. Morss's future appearances before this Court and the safety of other persons and the community.

I.  PROCEDURAL HISTORY

On June 10, 2021, the government filed a criminal complaint against Mr. Morss, charging him with several offenses related to the breach of the Capitol on January 6, 2021. Mr. Morss was subsequently arrested in Glenshaw, Pennsylvania on June 11, 2021. Mr. Morss stipulated to pretrial detention pending his transfer to the District of Columbia before a U.S. Magistrate Judge in the Western District of Pennsylvania. On June 16, 2021, Mr. Morss was indicted on three counts of robbery, in violation of 18 U.S.C. § 2111, two counts of assaulting a

federal officer, in violation of 18 U.S.C. § 111(a), one count of obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), one count of committing certain acts during civil disorder, in violation of 18 U.S.C. § 231(a)(3), on count of disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D), and one count of committing an act of violence in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(F). A detention hearing is scheduled for July 13, 2021.

## II.  DISCUSSION

Mr. Morss opposes the government's Motion for Pre-Trial Detention and seeks an order releasing him to his apartment, where he resides with his mother, on conditions. Utilizing the "default rule favoring liberty," Mr. Morss should be released pre-trial. *United States v. Cua*, No. 21-107, 2021 U.S. Dist. LEXIS 44293, at *23 (D.D.C. Mar. 10, 2021) (granting defendant's release to custody of parents in insurrection case involving, among other charges, assault with dangerous weapon). Indeed, "'[o]ur system of criminal justice embraces a strong presumption against detention.'" *United States v. Hassanshahi*, 989 F. Supp.2d 110, 113 (D.D.C. 2013) (quoting *United States v. Hanson*, 613 F.Supp.2d 85, 87 (D.D.C. 2009)). "'In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *Id.* (quoting *United States v. Salerno*, 481 U.S.739, 755 (1987)).

The government has moved for Mr. Morss' detention pursuant to 18 U.S.C. 3142(f)(1)(A), alleging that he is charged with a crime of violence. As such, this Court is tasked with deciding whether there is any condition or combination of conditions which can assure his future appearances in Court while ensuring the safety of other individuals and the community. 18 U.S.C. § 3142(f). In light of the guiding principles set forth above, Mr. Morss should be released pending trial because he is not a flight risk or danger to the community.

**A. The Government Cannot Prove by a Preponderance of the Evidence That Mr. Morss Poses a Serious Risk of Flight.**

There is no serious risk that Mr. Morss will flee if released on bail – a point the government appears to concede in admitting that his lack of criminal history and community ties weigh in favor of release and advancing no real argument that he poses a flight risk. *See* Gov't Mot. 34, ¶ 66. "In evaluating the likelihood of flight, the potential penalty has merit, but . . . the stability of [defendant's] relationship to the community" is much more persuasive. *White v. United States*, 412 F.2d 145, 147 (D.C. Cir. 1968).

The preponderance of evidence in this case establishes that Mr. Morss does not "pose[] a risk of flight or nonappearance[.]" S*ee United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) ("[W]hen the government seeks pretrial detention of an individual on the ground that he poses a risk of flight, the standard it must satisfy is a 'preponderance of evidence.'" (citation omitted)). Mr. Morss has strong ties to his community, including his vast history as a volunteer, and stable home in Pennsylvania, which is where he attended college and has been living. Although he originally hails from Nevada, Mr. Morss's mother, Anela Morss, has retired from her professional career and moved into Mr. Morss's apartment in Glenshaw, Pennsylvania to support him. She has an advanced degree in special and alternative education and possesses unique skills to assist her son in beginning counseling for his Post Traumatic Stress Disorder which he has been inflicted with due to his four tours of combat duty in Afghanistan. Moreover, Mr. Morss has no prior criminal record. All of these factors weigh heavily in favor of release.

**B. The Government Cannot Prove By Clear and Convincing Evidence That Mr. Morss Presents an Identified and Articulable Threat to an Individual or the Community.**

Outside of the unique set of circumstances that drew Mr. Morss to Washington, D.C. on January 6th, he does not present any specific and identifiable threat to any individual or his

3

community.  "To justify detention . . . [based on] dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person in the community."  *United States v. Munchel*, 991 F.3d 1273, 1279-80 (D.C. Cir. 2021) (citations omitted); *see also* 18 U.S.C. § 3142(f).  In assessing whether Mr. Morss must be detained on the basis of dangerousness, the Court considers the following factors: "(1) the nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).  On balance, weighing these factors against the backdrop of the notion that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception[,]" Mr. Morss does not pose a "concrete, prospective threat to public safety."  *Munchel*, 991 F.3d at 1279, 1280.

        1. *Nature and circumstances of the offense charged.*

In considering the nature and circumstances of the offense charged, the Court considers whether the offense charged is a crime of violence.  18 U.S.C. § 3142(g)(1).  Mr. Morss is charged with two counts of assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. §§ 111(a)(1) and (2).  The government has not argued that these offenses constitute a crime of violence.  Gov't Supp. Mem. in Supp. of Mot. for Pre-Trial Det. ¶¶ 1-2.  The government's sole argument is that the three counts of robbery filed against Mr. Morss, in violation of 18 U.S.C. § 2111, constitutes a crime of violence under the Bail Reform Act.

"As relevant here, a 'crime of violence' is either:  (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; [or] (B) any other offense that is a felony and that, by its nature, involves a

4

substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *United States v. Sabol*, No. 21-35-1, 2021 U.S. Dist. LEXIS 71836, at *16-17 (D.D.C. Apr. 14, 2021) (quoting 18 U.S.C. § 3156(a)(4)(A)-(B)). A similar statute, 18 U.S.C. § 92(e)(2)(B)(i), has been interpreted as requiring "violent force—that is, force capable of causing physical pain or injury to another person." *Id* at *17 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). Courts utilize the traditional categorical approach – looking to the elements of the charged crime rather than defendant's conduct, unless the statute is divisible and defines multiple crimes, in which case the Court can utilize the modified categorical approach and review documents such as the indictment. *Id.* (citing *United States v. Singleton*, 182 F.3d 7, 10-12 (D.C. Cir. 1999); *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)).

The government has correctly identified the Circuit Courts of Appeal which have held that robbery under 18 U.S.C. § 2111 is categorically a crime of violence. *See, e.g. United States v. Shirley*, 808 Fed. App'x 672 (10th Cir. 2020); *United States v. Fultz*, 923 F.3d 1192, 1193 (9th Cir. 2019). However, the designation of robbery as a crime of violence does not mandate detention, it merely renders Mr. Morss eligible for it.

Nor does the D.C. Circuit's decision in *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021) mandate detention. The D.C. Circuit recently clarified that "[t]he point of *Munchel* was that everyone who entered the Capitol on January 6 did not necessarily pose the same risk of danger and the preventive detention statute should apply to the January 6 defendants the same as it applies to everyone else, not that the January 6 defendants should get the special treatment of an automatic exemption from detention if they did not commit violence on that particular day." *United States v. Hale-Cusanelli*, --- F.4d ---, 2021 U.S. App. LEXIS 20071, at *16 (D.C. Cir.

July 7, 2021). Thus, remaining faithful to the application of the Bail Reform Act's factors, no *per se* rules apply to January 6 defendants based on whether they committed acts of violence in the Capitol Building.

The charged offenses are undoubtedly serious. There is no evidence to support that he coordinated or planned with anyone on that particular day. Mr. Morss was present at the Capital and seen at various times on video. During his time at the Capital, he got caught up in the frenzy of the protest and acted out spontaneously. There is no evidence that he brought a firearm to the Capital. The three firearms recovered from his apartment subsequent to his arrest have since been removed from Mr. Morss's apartment and locked in storage containers in his parents' home in Sparks, Nevada, thousands of miles from his residence in Pennsylvania.

   2. *Weight of the evidence against Mr. Morss*.

Although there is ample video evidence in this case, "[e]ven overwhelming evidence of guilt" does not amount to "clear and convincing evidence that no conditions of release can reasonably assure the safety of the community." *United States v. Taylor*, 289 F. Supp.3d 55, 66 (D.D.C. 2018) (instructing court must "review the weight of the evidence against the defendant as an indicia of whether any conditions of pretrial release will reasonably assure the safety of the community"). There are conditions of release to assure the safety of Mr. Morss's community.

   3. *History and characteristics of Mr. Morss.*

In considering the history and characteristics of Mr. Morss, the Court must take into account "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings . . . ." 18 U.S.C. § 3142(g)(3)(A). This factor weighs heavily in favor of release.

Mr. Morss is a 28-year old combat veteran with no prior criminal history and thus, no record of failing to appear for court.  Mr. Morss was honorably discharged from the Army after enlisting right after graduating high school at age 17 and serving three combat tours of duty in Afghanistan.  He received numerous medals of honor for his exemplary service.

He is also a recent graduate of Penn State University with a degree in education.  He worked as a Veterans Administration Work Study student while attending school and received exemplary reviews from his Office Manager.  He completed a student-teaching assignment in the fall of 2020 at Shaler Area Middle School and received outstanding reviews from his supervisory teacher in the Social Studies Department.  In particular, his supervising teacher praised him for using his technological knowledge to help implement a hybrid remote curriculum to accommodate learning during the pandemic, as well as his preparation and ability to adjust his teaching methods to students with varying needs.  The Supervisor of Student Teachers at Penn State gave Mr. Morss similar reviews as an outstanding student, communicator, and lauded his professionalism.

Although he is not originally from Pennsylvania, he has significant ties to the community after having attended college there and deciding to reside in Glenshaw.  He has full family support, including his mother's, who recently retired and moved from Nevada to live in his apartment and support him throughout the pendency of this case.  She is fully committed to supporting him in receiving treatment for his mental health issues.  Mr. Morss is also actively involved in his community as evidenced by his volunteer work with the Travis Manion Foundation, which develops programs, training opportunities, and events for veterans and families.  *See*, Travis Manion Foundation, *Who We Are*, located at: https://www.travismanion.org/about-us/who-we-are/.  Defense exhibits C through E evidence his

efforts his completion of a mural commemorating the Cloyd K. Davis American Legion's Post 150 in Petersburg, Pennsylvania 100th anniversary. The 10- panel painting pays tribute to America's veterans who served over the past 244 years, from the revolution War to the battles in the Middle East. Mr. Morss worked tirelessly for 7 months, along with other Penn State students he recruited to complete the mural in time for its August 1, 2020 unveiling.

With respect to Mr. Morss physical and mental condition, Mr. Morss reports having suffered physical injuries which have left him with a hearing deficit, and Post Traumatic Stress Disorder ("PTSD") as a result of his combat experience in Afghanistan. He has never sought therapy or treatment for his resultant mental health issues. Mr. Morss is fully committed to seeking treatment and complying with any mental health care condition this Court deems necessary.

        4. *Nature and seriousness posed by Mr. Morss's release.*

The final factor to consider is the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(4). When analyzing the nature and seriousness posed by Mr. Morss's release, the Court must consider whether the government has "proved by clear and convincing evidence that an arrestee *presents an identified and articulable threat* to an individual or the community . . ." *Munchel*, 991 F.3d at 1280. Indeed, the point of detention is to "disable the arrestee *from executing that threat.*" *Id.* (quotation omitted). Although January 6 defendants charged with assaulting officers are viewed as being more potentially dangerous than those who merely "cheered on the violence or entered the Capitol after others cleared the way," *Munchel*, 991 F.3d at 1284, Mr. Morss is not charged with assault with a dangerous weapon under 18 U.S.C. § 111(a) and (b) like some of the January

6 defendants who have been detained pending trial, which speaks to a lesser degree of dangerousness on his part.  *See, e.g. Sabol*, 2021 U.S. Dist. LEXIS 71836, at *11 & *69.

The Court also must consider the threat in context.  *Munchel*, 991 F.3d at 1283.  Here, when viewed in context, the only threat arguably presented by Mr. Morss is limited to the particular circumstances that transpired on January 6th.  *See id*.  Viewed within the context of January 6th, the evidence shows that Mr. Morss was caught up in the frenzy of the rally and protest.  At most, one could assume *arguendo* that Mr. Morss might pose a danger to, say, attempt to stop an act of Congress in the future, but this danger would require the same set of unique circumstances that occurred on January 6. 2021 – rally, protest, Congressional tally of votes – to take place again at some point in the future.  This is simply too speculative a basis to make a specific finding of danger to any person or the community.

There is no clear and convincing evidence that Mr. Morss poses a specific danger to law enforcement if released.  When considering the danger posed by a person's release, it absolutely is appropriate to consider whether the individual will "engage in the *same kinds* of inherently dangerous and illegal activities" at issue in the particular case.  *United States v. Wiggins*, -- F. Supp.3d --, 2020 WL 1868891, at *8 (D.D.C. Apr. 10, 2020) (holding defendant did not show by clear and convincing evidence that if he were released he would not engaged in the same kinds of dangerous activities) (emphasis added); *see also United States v. Lee*, 451 F. Supp.3d 1, 7-8 (D.D.C. 2020) (concluding the danger posed by the person's release is the "risk that he will continue to engage in the *same types* of unlawful and potentially dangerous conduct") (emphasis added)).

Here, there is no danger that Mr. Morss will engage in the same type of conduct in which he engaged on January 6th.  Considering his "resources and capabilities," *Munchel*, 991 F.3d at

1283, he has minimal financial resources as a recent college graduate and is willing to abide by any limitations or monitoring the Court may wish to order be placed on his electronic devices and social media accounts. Counsel is aware of no evidence that Mr. Morss created any social media posts threatening continued political violence. *See Cua*, 2021 U.S. Dist. LEXIS 44293, at *15-23 (granting release despite defendant's violent social media postings). Rather, the evidence shows Mr. Morss continued working full time as a substitute teacher at the Shaler Area Middle School. On June 11, 2021, almost six months after the events at the Capital, he was arrested in the morning outside his apartment on his way to work. Simply put, Mr. Morss's release poses no danger to his community.

The government places great emphasis on a notebook found in Mr. Morss's car with writings including "Step by Step To Create Hometown Militia," which included names, a list of equipment, a list of steps such as "Battle Drills," and notes about "Bring Body Kit/Body Armor," "Bring Assault Rifle," and "4 Magazines." Although the government's concern is understandable, Mr. Morss reports that he utilizes "journaling" in part as an outlet to express his trauma from serving in combat duty. It is notable that government agents did not recover any documentary evidence from social media postings or other electronic communications indicating that Mr. Morss was planning a specific attack for the future or planning anything for that matter. Even to the extent that the Court is concerned by the journal, it should not outweigh the extensive evidence showing that the community will remain safe if Mr. Morss is released. Conditions such as home monitoring, restrictions on travel, and restrictions or monitoring of his internet use would be more than adequate to ensure the community's safety. And, as noted above, Mr. Morss has already removed all firearms from his residence and agrees that he cannot purchase any new ones.

Viewing the nature and seriousness of the danger in context, it is clear that he posed no danger to his community before or after January 6th. Moreover, any risk concerns can be mitigated through any number of conditions of release. If, however, the Court considers the risk of danger in this case to be a close call, the decision regarding release should be "guided by the default rule favoring liberty." *Cua*, 2021 U.S. Dist. LEXIS 44293, at *23.

### III.   CONCLUSION

For the foregoing reasons, defendant Robert Morss respectfully requests the Court deny the government's Motion for Pre-Trial Detention and grant him release on appropriate conditions.

Respectfully submitted,

/s/ Kathleen M. Gaughan
KATHLEEN M. GAUGHAN
Assistant Federal Defender

/s/ Elizabeth L. Toplin
ELIZABETH L. TOPLIN
Assistant Chief, Trial Unit

# CERTIFICATE OF SERVICE

We, Kathleen M. Gaughan, Assistant Federal Defender, and Elizabeth L. Toplin, Assistant Chief, Trial Unit, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that we caused a copy of the Defendant's Response to the Government's Motion for Pre-Trial Release to be filed and served electronically through the District of Columbia District Clerk's Office Electronic Case Filing upon Melissa Jackson, Assistant United States Attorney, United States Attorney's Office, 555 4th St., NW, Washington, DC 20530.

/s/ Kathleen M. Gaughan
KATHLEEN M. GAUGHAN
Assistant Federal Defender


/s/ Elizabeth L. Toplin
ELIZABETH L. TOPLIN
Assistant Chief, Trial Unit


DATE: July 12, 2021