IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 21-CR-40-5 (TNM) |
| | : | |
| v. | : | |
| | : | |
| ROBERT MORSS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## STATEMENT OF FACTS FOR STIPULATED TRIAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Robert Morss, with the concurrence of his attorney, hereby submit the Elements and Statement of Facts for Stipulated Trial as to Counts 20, 27 and 34 of the Fifth Superseding Indictment.

**I.    Elements**

The essential elements of Robbery within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 2111, each of which the government must prove the following beyond a reasonable doubt are:

1.  That the defendant obtained property that he was not lawfully entitled to, from a person without, that person's consent;

2.  That the defendant used actual or threatened force, violence, or intimidation to obtain the property;

3.  The defendant knowingly obtained the property in this way; and

4.  The defendant committed this offense within the special maritime or territorial jurisdiction of the United States.

The government further alleges that the defendant aided and abetted others in committing robbery within the special maritime and territorial jurisdiction of the United States. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

1.  Others committed robbery by committing each of the elements of the offense charged;

2.  The defendant knew that robbery was going to be committed or was being committed by others;

3.  The defendant performed an act or acts in furtherance of the offense;

4.  The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense robbery; and

5.  The defendant did that act or acts with the intent that others commit the offense of an robbery.

The essential elements of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), each of which the government must prove the following beyond a reasonable doubt are:

1.  That the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with any officer or employee of the United States or of any agency in any branch of the United States Government;

2.  That the defendant did so with some use of force;

3.  That the defendant did so while the officer or employee was engaged in or on account of the performance of official duties; and

4.  That the assault involved physical contact with the victim or the intent to commit another felony.

The government further alleges that the defendant aided and abetted others in committing the offense of assaulting, resisting, or impeding certain officers. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

1. Others committed the offense of assaulting, resisting, or impeding certain officers by committing each of the elements of the offense charged;

2. The defendant knew the offense of assaulting, resisting, or impeding certain officers was going to be committed or was being committed by others;

3. The defendant performed an act or acts in furtherance of the offense;

4. The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of assaulting, resisting, or impeding certain officers; and

5. The defendant did that act or acts with the intent that others commit the offense of assaulting, resisting, or impeding certain officers.

The essential elements of the offense of obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2), each of which the government must prove the following beyond a reasonable doubt:

1. The defendant attempted to or did obstruct or impede an official proceeding;

2. The defendant intended to obstruct or impede the official proceeding;

3. The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

4. The defendant acted corruptly.

The government further alleges that the defendant aided and abetted others in committing

obstruction of an official proceeding. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

1. Others committed obstruction of an official proceeding by committing each of the elements of the offense charged;

2. The defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others;

3. The defendant performed an act or acts in furtherance of the offense;

4. The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; and

5. The defendant did that act or acts with the intent that others commit the offense of an obstruction of an official proceeding.

## II.     Statement of Offense

### *The Attack at the U.S. Capitol on January 6, 2021*

1.     The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.     On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3.     On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected

members of the United States House of Representatives and the United States Senate were meeting

in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election,

which had taken place on Tuesday, November 3, 2020. The joint session is set out in the Twelfth

Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18. The joint session

began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and

Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike

Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice

President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol.

Temporary and permanent barricades, as noted above, were in place around the exterior of the

Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol

and the proceedings underway inside.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way

through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd

advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or

remain in the building and, prior to entering the building, no members of the crowd submitted to

security screenings or weapons checks as required by USCP officers or other authorized security

officials.

6.      At such time, the certification proceedings were still underway, and the exterior

doors and windows of the Capitol were locked or otherwise secured. Members of the USCP

attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows

and by assaulting members of law enforcement, as others in the crowd encouraged and assisted

those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Robert Morss's Participation in the January 6, 2021, Capitol Riot*

8.      The defendant, Robert Morss, lives in State College, Pennsylvania. The defendant traveled from Pennsylvania to Washington, D.C. The purpose of the defendant's trip to Washington, D.C., was to protest Congress' certification of the Electoral College.

9.      Records from defendant Morss's iPhone and iCloud prior to January 6, 2021, confirm his plans to travel to D.C. on January 6, including multiple texts regarding his preparation and the gear he would bring. Specifically, on January 4, 2021, Morss texted one individual that he would "have [my] plate carrier on as well" and that he was "ready for anything and everything brotha."

10.     Similarly, defendant Morss's iPhone shows many messages supporting the "Stop The Steal" movement regarding the results of the 2020 presidential election. On November 6, 2020, defendant Morss texted an individual about going to the Pennsylvania state capitol, stating "It's not time to be violent yet, but when the day comes the will know where I stand because I was at my capital building tomorrow[.]"

11.     On December 31, 2020, defendant Morss texted an individual that he was "excited for the 6th." When that individual asked "What's the 6th?", defendant Morss sent screen capture of a Tweet with an image of the text: "America Will Not Be 'Reset' America Will Be Reborn" and "1776 Will Commence Again January 6th, 2021, Washington, D.C." and a picture of former President Trump next to the words "Be there, Will be Wild." Defendant Morss followed up this image with the text to that individual, "IT'S GOING DOWWWWWWN!!!!!"

12.     On January 6, 2021, defendant Morss drove from Pennsylvania to Washington D.C. On the morning of January 6, 2021, defendant Morss went to the Ellipse in downtown, D.C., where former President Trump was speaking at the "Stop the Steal" rally. After the rally, defendant Morss made his way to the U.S. Capitol grounds. intending to stop or prevent Congress from certifying the Electoral College vote results.

13.     On January 6, 2021, at approximately 2:00 p.m. defendant Morss joined the crowd gathering on the West Front of the U.S. Capitol grounds. Defendant Morss was wearing camouflage pants, a camouflage shirt, a vest intended to carry body armor plates, a black knife sheath, scissors, and a red "Make America Great Again" hat.

14.     While on the grounds of the U.S. Capitol, at approximately 2:09 p.m., defendant Morss stood at the front of the line of rioters squaring off with members of the U.S. Capitol Police

and the Metropolitan Police Department. Defendant Morss attempted to steal a police-issued baton from Metropolitan Police Department Sergeant B.G.

15.     At approximately 2:14 p.m., defendant Morss attempted to, and did, forcefully remove a bike rack fence, belonging to the U.S Capitol Police, from the immediate custody and control of Metropolitan Police Department Sergeant J.C., leaving no barrier between the police officers and the rioters.

16.     At approximately 2:26 p.m., defendant Morss yelled out to several Metropolitan Police Department Officers, while pointing at the U.S. Capitol, "Take a look around. We are going to take our Capitol back."

17.     At approximately 2:28 p.m., rioters breached the line of law enforcement officers on the West Front of the U.S. Capitol Grounds. Defendant Morss joined the line of rioters that pushed the police back.

18.     At approximately 2:40 p.m., officers retreated from the West Front up to the Lower West Terrace, where the inaugural platform was being built. Morss followed the officers up to the Terrace.

19.     From approximately 2:40 p.m., a group of law enforcement officers maintained a line at the second set of glass doors inside the tunnel leading from the inaugural platform to the entrance to the Capitol. These officers fought a group of rioters inside the tunnel, including defendant Morss, back from the door until approximately 3:19 p.m. when they cleared the rioters from the tunnel.

20.     At approximately 2:57 p.m., defendant Morss appeared at the mouth of the tunnel, and made his way towards the double doors, which were being guarded by police. At

Approximately 3:03 p.m., defendant Morss participated in a heave-ho motion in which the rioters rocked against the police line in an effort to break through.

21.     At approximately 3:05 p.m., defendant Morss, along with at least one other rioter, struggled over a police department-issued shield from the person of Metropolitan Police Department Detective P.N., who was defending the entrance door to the U.S. Capitol. Defendant Morss ultimately wrested the shield from the immediate and actual possession of Detective P.N, and then passed the shield back in the tunnel, out towards the rioters on the inaugural stage.

22.     At approximately 3:07 p.m., defendant Morss, along with other rioters, created a shield wall, with riot shields stolen from the officers defending the U.S. Capitol, to push against the officers in an attempt to gain entry into the building. From approximately 3:11 p.m. until 3:13 p.m., Morss and other rioters participated in a heave-ho effort, throwing their bodies in rhythm against the shield wall they had created to push past the officers.

23.     At approximately 3:45 p.m., rioters on the Lower West Terrace inaugural platform broke the window on the left side of the tunnel, when facing the tunnel from the West front. Defendant Morss joined several other rioters in climbing through the window and entered office ST2M within the U.S. Capitol. Defendant Morss took some furniture, specifically a chair, and passed it out of the broken window to the rioters on the inaugural stage.

24.     Defendant Morss finally left the grounds of the U.S. Capitol and returned to Pennsylvania.

25.     On January 12, 2021, the defendant sent a text message to an individual stating "This is Robert one of the guys in armor you met at the rally last Wednesday. I hope you got out of DC safe."

26.     On January 27, 2021, the defendant wrote a note in the iPhone Notes application on his phone, entitled "Should I have to appeal before a judge what am I gonna say." The nine-paragraph note included statements such as "[y]ou ask if I regret my involvement and what happened on the sixth my answer is resounding no" and "[i]f you thought that the capital as a temple of democracy was desecrated in a matter of five hours you choose not to see the desecration to our rights that has taken place within those halls of power for the last half century."

27.     After the defendant's arrest on June 11, 2021, FBI agents approached an individual, H.B. on July 13, 2021. The defendant stayed with H.B. on occasion, including during the time of the riot at the U.S. Capitol, between December 2020 and February 2021, at which time he moved into his own residence. H.B. gave permission to search items left by defendant Morss in the garage of H.B.'s residence. Multiple items were recovered, including a plate carrier and tactical vest with body armor plates inside the carrier, a pair of Salomon boots, camouflage top and pants, and a red Make America Great Again hat, all consistent with items seen on defendant Morss in videos and photographs from the U.S. Capitol on January 6, 2021. Attached to the tactical vest was a pair of scissors and black knife inside a black knife sheath, also visible in the footage of defendant Morss on the grounds of the U.S. Capitol on January 6, 2021.

If the Court finds the existence of these facts beyond a reasonable doubt, the defendant stipulates that this evidence would establish each and every element of the charged offenses for Counts 20, 27, and 34 of the Fifth Superseding Indictment. ECF No 179.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: _____
KIMBERLY L. PASCHALL
Assistant United States Attorney
D.C. Bar No. 1015665

## DEFENDANT'S ACKNOWLEDGMENT

I, Robert Morss, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 23 Aug 2022

_____
Robert Morss
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 23 Aug 2022

_____
John Kiyonaga
Attorney for Defendant Morss