IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| v. | ) Case No. 21-cr-40-TNM |
|  | ) |
| ROBERT MORSS, | ) |
|  | ) |
| Defendant. | ) |

**SENTENCING MEMORANDUM OF ROBERT MORSS**

Twenty-nine years old, Robert Morss served in the United States Army from 2011 to 2015. He saw three tours of duty in Afghanistan. After returning home, Morss earned a bachelor's degree in 2020 from Pennsylvania State University. Yet within a year he was arrested for his conduct at the Capitol on January 6. For his mistakes that day he has been detained pretrial (and prior to sentencing) for almost 24 months. Early on, guards physically abused him in the D.C. Jail.

After a stipulated trial in September 2022, Morss was found guilty of robbery for taking a shield from a police officer (18 U.S.C. § 2111); assaulting, resisting or impeding law enforcement officers (18 U.S.C. § 111(a)(1)); and obstruction of an official proceeding (18 U.S.C. § 1512(c)(2)). The first conviction appears to be flawed. Section 2111 applies to robberies committed "within the special maritime and territorial jurisdiction of the United States." § 2111. The District of Columbia is not a special jurisdiction. 18 U.S.C. § 7. A different section covers robberies involving federal property. § 2112. That offense appears not to have been charged here as the victim was a Metropolitan Police Department officer—not a federal employee (unlike the U.S. Capitol Police)—and there appears to be insufficient evidence

1

showing that his shield was "property belonging to the United States"—but in the hands of a non-federal employee. *Id.*

Thus the Presentence Report has miscalculated the Guidelines range. It has also mistakenly added 11 offense levels for interference with "the administration of justice." U.S.S.G. §2J1.2(b). Congress does not administer justice. In light of the penalties he has already paid, and to avoid unwarranted sentence disparities in this case, Morss respectfully requests a sentence of no more than 24 months' incarceration.

**Factual background**

    A.    **Morss's background, family, employment history, and character**

Born in 1993 in Reno, Nevada, Morss lived there until he enlisted in the Army in 2011, when he was eighteen years old. Today he remains very close to his adoring mother, Angela, who now resides in Pennsylvania. As one of his brothers-in-arms explains in a letter to the Court, Morss enrolled early on in the Ranger Assessment and Selection Program, operated by the Special Operations unit of the 75th Ranger Regiment. Morss Ltrs., Exh. 1, p. 1. On graduation, he was assigned to the 2nd Ranger Battalion. *Id.* It was with that unit that Morss saw three tours of hard duty in the Afghanistan war. He was honorably discharged in December 2015, having received a Good Conduct Medal, Joint Service Ribbon, and Army Accommodation Medal during his military career.

After completing Army service, Morss attended Pennsylvania State University, earning his Bachelor of Arts degree in 2020. From January 2021 until his arrest, he taught history classes at a high school in Pittsburgh. Morss had always wanted to be a teacher.

Despite experiencing hard and occasionally brutal combat overseas (he still suffers from back pain on account of parachute jumps) or perhaps because of it, Morss remains almost

impervious to pessimism. Even today in jail he avoids dwelling on negative things and is cheerful in his outlook on life. This jovial side of his character, and his generous nature, is reflected in the letters submitted on his behalf. Exh. 1.

One anecdote stands out. As a veteran, Morss joined the American Legion. The commander of a post in Pennsylvania needed to have the walls of his social hall painted with a mural. Exh. 1, p. 2. Morss volunteered to execute the project, "not only with his hands but with his heart." *Id.* For several weeks Morss and a team he assembled made the 50-mile roundtrip drive, every day, from Penn State to the American Legion hall. They did this at their own expense. By the time Morss and his team had completed their work, the hall was adorned with ten murals, each one honoring a U.S. war or conflict. At the unveiling ceremony, Morss gave a speech on each conflict, explaining its role in American history.

Arrested in June 2021, Morss has been detained pretrial ever since. He experienced real hardship in the D.C. Jail. Morss was strip searched at least five times, for no apparent reason. On one occasion, he demanded to know why guards insisted on that invasive procedure. Handcuffed, Morss was then shuffled into a dark room where he was maced. On another occasion, Morss asserts, a correctional officer sexually abused him during a search. He was eventually transferred to USP Lewisburg in Pennsylvania.

**B.     The convictions and presentence investigation report**

As indicated, Morss agreed to a set of facts for a stipulated trial on three charges: robbery (§ 2111); assaulting, resisting or impeding law enforcement officers (§ 111(a)(1)); and obstruction of an official proceeding (§ 1512(c)(2)). ECF No. 430. He was found guilty of the three charges on September 13, 2022.

The robbery conviction appears flawed. First, Section 2111 applies only to offenses committed "within the special maritime and territorial jurisdiction of the United States." § 2111. However, the District of Columbia is not such a special jurisdiction. *See*, *e.g.*, *United States v. Hillie*, 14 F.4th 677, 694 n. 1 (D.C. Cir. 2021) (holding that the federal voyeurism statute "is inapplicable" in a D.C. child pornography case because it "applies only in the special maritime and territorial jurisdiction of the United States"); *see also* 18 U.S.C. § 7 (defining "special maritime and territorial jurisdiction of the United States," which does not include D.C.).

Second, even if a different section applicable to robberies involving federal property had been charged here—§ 2112—it is not clear that the conviction would be valid. Count Twenty of the Fifth Superseding Indictment charges that the victim of the robbery was "P.N., an officer from the Metropolitan Police Department." ECF No. 179, p. 10. MPD property does not "belong[] to the United States. . ." § 2112. Counsel is not aware of evidence establishing that the shield at issue did *not* belong to the MPD.[1] To the contrary, the stipulated facts merely state that the property was a "police-department issued shield" taken from "the person of Metropolitan Police Department Detective P.N. . ." ECF No. 430, p. 9.

There appears to be another flaw. To prove a robbery under § 2112—which, again, was not charged—the government must show the defendant's specific intent to steal property, i.e., permanently deprive the owner of it. *E.g.*, *United States v. Nordean*, *et al.*, 21-cr-175-TJK, Jury Instructions, ECF No. 767, p. 40; *see also* Red Book, § 4.300. But, here, the stipulated facts do not include facts showing Morss's intent to permanently deprive the federal government of a

---

[1] Indeed, this fact likely explains why the government elected to charge Morss under § 2111 in the first place, notwithstanding its special-jurisdiction limitation.

4

shield (which may not belong to it, in any event). ECF No. 430, pp. 1, 21 (stating that Morss "wrested the shield" from an officer and "passed the shield back in the tunnel").

Accordingly, the PSR's addition of two sentencing levels for a charging group that contains only the robbery count is in error. PSR, ¶ 84.[2]

As to the § 1512(c)(2) offense, the PSR correctly calculated the base offense level of 14. PSR, ¶ 75 (citing U.S.S.G. §2J1.2(a)). However, the PSR added the eight-level Specific Offense Characteristic applicable when the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice. PSR, ¶ 76 (citing U.S.S.G. §2J1.2(b)(1)(B)). It also added the three-level enhancement for substantial interference with the administration of justice. PSR, ¶ 77 (citing U.S.S.G. §2J1.2(b)(2)). Neither applies, as Congress does not "administer justice." *United States v. Seefried*, 2022 U.S. Dist. LEXIS 196980, __ F. Supp. 3d __ (D.D.C. Oct. 29, 2022).

The PSR also added six offense levels under the victim related adjustment at U.S.S.G. §3A1.2(b). This was mistaken, for several reasons. First, this guideline does not apply on its own terms, as "the offense guideline [at issue] specifically incorporates this factor. The only offense guideline in Chapter Two that specifically incorporates this factor is §2A2.4 (Obstructing or Impeding Officers)." §3A1.2 cmt. n. 2. The PSR itself contends that the relevant offense guideline is §2A2.4. PSR, ¶ 63. Second, as explained, the relevant offense for "Group 2" is scored under §2J1.2 (not §2A2.4). PSR, ¶ 65 (citing U.S.S.G. §3D1.3(a)). Yet that offense does not feature a "victim" for purposes of the adjustment at §3A1.2. And, finally, even if the Court could apply §3A1.2 notwithstanding those two flaws, the stipulated facts give no indication that

---

[2] Morss's counsel apologizes to the Court for not filing a timely objection to the draft PSR. On May 4, counsel concluded a five-month jury trial in *United States v. Nordean*, 21-cr-175. Then, on May 9, counsel participated in a bench trial in *United States v. Powell*, 21-cr-179.

5

the § 111(a)(1) offense was "motivated" by the victim's status as a police officer, as opposed to, for example, a desire to move past the officer into the Capitol Building.

In sum, then, Morss's correct combined adjusted offense level is 14, not 33. PSR, ¶ 85. As the PSR indicates, Morss has clearly accepted responsibility for his actions, so the offense level is reduced by two. PSR, ¶ 87. That leaves a correct total offense level of 12, not 30. PSR, ¶ 30. In Criminal History Category I, Morss's correct sentencing range is 10-16 months' incarceration. U.S.S.G. Ch. 5.

**Argument**

I. **Sentencing procedure**

As it knows, the Court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). Although the Court must first calculate the appropriate sentencing range under the Guidelines, it is not bound by the Guidelines or Guidelines Policy Statements. It may make its own policy judgments, even if different from those in the Guidelines. *Kimbrough*, 552 U.S. at 101.

The Court must merely impose a sentence consistent with the terms of 18 U.S.C. § 3553(a) and § 3661. As the Court knows, the cardinal requirement of § 3553(a) is that the "court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes of [§ 3553(a)]. . ." § 3553(a).

II. **The § 3553(a) factors favor a significant downward variance**

    A. **The nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1))**

A number of considerations under § 3553(a)(1) merit a significant downward variance[3] in Morss's case: (1) his § 2111 conviction may have resulted from ineffective assistance of counsel; (2) his mens rea may not satisfy the corrupt intent standard for the § 1512(c)(2) offense outlined in Judge Walker's controlling concurring opinion in *United States v. Fischer*, 64 F.4th 329, 351 (D.C. Cir. 2023); (3) Morss has experienced unusual hardship in pretrial confinement; (4) Morss's first-time offender status; and (5) Morss's remorse.

### 1. The § 2111 conviction may have resulted from ineffective assistance

As outlined above, Morss's conviction under § 2111 may be invalid. The defendant has not had the opportunity to file a § 2255 motion to vacate the judgment for ineffective assistance of counsel. But if the Court concludes that the District of Columbia is not "within the special maritime and territorial jurisdiction of the United States," § 2111, that would constitute powerful grounds for downwardly varying from a Guidelines range that is enhanced through the inclusion of that conviction.

### 2. Evidence of Morss's corrupt intent is marginal

In *Fischer*, the court of appeals reversed the district court's dismissal of the government's § 1512(c)(2) charge in a January 6 case. However, Judge Walker's vote to join the lead opinion was expressly conditioned on a narrow construction of the crime's "corruptly" element. *E.g.*, *Fischer*, 64 F.4th at 352 n. 1 (Walker, J., concurring in part) ("[M]y vote to uphold the indictments depends on it."). Namely, a corrupt defendant must act with "the intent to procure a benefit which the offender *knows* is unlawful." *Id.* at 352 (emphasis original). The concurring

---

[3] If Morss is correct that his Guidelines range is 10-16 months' incarceration, the Court would not need to downwardly vary to arrive at a sentence of 24 months' incarceration. His references to a "downward variance" have been included in case the Court's Guidelines calculation goes beyond 24 months' incarceration.

opinion explains why it should be regarded as the court's holding under the rule of *Marks v. United States*, 430 U.S. 188, 193 (1977). *Fischer*, 64 F.4th at 362 n.10; *see also United States v. Worrell*, 21-cr-292-RCL, Oral Verdict, ECF No. 245 (applying in January 6 case the definition of "corruptly" outlined in Judge Walker's *Fischer* concurrence).

Here, the stipulated facts do not appear to show how Morss acted with the intent to procure a benefit for himself, or for another person, that Morss knew was unlawful. The only fact that appears relevant to the issue is this statement: "Similarly, defendant Morss's iPhone shows many messages supporting the 'Stop the Steal' movement regarding the results of the 2020 Presidential election." ECF No. 430, p. 7. But it is not clear how Morss's support for the "'Stop the Steal' movement" betrays a guilty mindset that the "benefit" he procured on January 6, presumably for the former president, was "unlawful." To the contrary, if Morss believed that the election was "stolen," he necessarily also believed that the desired benefit—the reelection of the former president—was lawful, not unlawful. Nothing in the stipulated facts indicates that Morss's support for the "'Stop the Steal' movement" was insincere or cynical.

A related issue is Morss's knowledge of the nature of the official proceeding on January 6. In *United States v. Black*, the defendant pushed past law enforcement officers guarding the Capitol that day, entered the building, and proceeded all the way to the Senate chamber. 21-cr-127-ABJ. The Senate had been evacuated minutes before Black's arrival. Verdict Tr., 10. The defendant carried a "long" and "sharp" hunting knife, *id.* at 40, that was "capable of eviscerating a deer." *Id*., p. 44. Thus, after a bench trial, the Court found Black guilty of entering a restricted building or grounds while carrying a deadly or dangerous weapon, a felony offense. *Id.*

However, the Court found the defendant not guilty of the Section 1512(c)(2) offense even though he entered the Senate chamber with a deadly weapon minutes after members of Congress

had fled the scene. The Court reasoned as follows. To satisfy the obstruction-of-justice crime's mens rea requirement,

> [T]he defendant has to have a particular official proceeding in mind. And here the official proceeding has to be the one alleged in the indictment, the congressional certification of the Electoral College results. *Not simply some business of the government, some business of the Congress or the results of the election in general.*

Verdict Tr., p. 29 (emphasis added).

The Court found that the government's evidence did not meet that standard beyond a reasonable doubt, and for this reason:

> [W]e do not have one single text or Tweet or statement by this defendant—before, on, or after January 6—where he articulates his [political] grievance *in terms of anything that Congress was supposed to do in terms of any proceeding that was going on that day [on January 6].*

Verdict Tr., p. 30 (emphasis added).

Instead, the evidence showed only that Black understood he was "doing a protest at the Capitol" which related to a presidential election he believed was "stolen." Verdict Tr., p. 30. That was insufficient mens rea evidence for the Section 1512(c)(2) offense. *Id.*

Here, the stipulated facts do not appear to show statements by Morss "before, on or after January 6 . . . where he articulates his [political] grievance in terms of anything that Congress was supposed to do in terms of any proceeding that was going on that day." *Black*, Verdict Tr., p. 30. In sum, the marginal mens rea evidence in Morss's § 1512(c)(2) case warrants a downward variance.

### 3. Unusual hardship in pretrial confinement

No stint in jail is without hardship. But Morss's experience has been unusually harsh. He was initially incarcerated in the D.C. Jail and at a time when January 6 defendants were not infrequently subject to ill usage by correctional officers. That prompted Judge Lamberth to hold

9

the warden of the jail and the Director of the D.C. Department of Corrections in civil contempt. *U.S. judge says D.C. jail violated civil rights of Capitol riot defendant*, Reuters, Oct. 13, 2021, https://www.reuters.com/article/legal-us-usa-capitol-arrests-jail/u-s- judge-says-d-c-jail-violated-civil-rights-of-capitol-riot-defendant-idUSKBN2H31OS.

And Morss's experience went beyond what Judge Lamberth took notice of.  As noted above, Morss was subjected to frequent strip searching for reasons that are not clear.  On one occasion, correctional officers maced him after he complained.  On another, Morss asserts that he was sexually abused by a correctional officer in a particularly obscene manner.  Needless to say, these abuses have no place in, and disgrace, the criminal justice system.  They are of a nature that could leave a lifelong mark on Morss.  This too warrants a downward variance in his sentence.

### 4. First-time offender status and atypical conduct

The fact that Morss is a first-time offender, and that the offense conduct is atypical for him, is an appropriate basis for a downward variance.  *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008) (affirming that district court's downward variance from 60-to-79-month range to below the calculated Guidelines range was reasonable and permissibly took into account the defendant's lack of a criminal record); *United States v. Munoz-Nava*, 524 F.3d 1142, 1143 (10th Cir. 2008) (downward variance to one year imprisonment and one year home confinement from recommended Guidelines range of 65-78 months imprisonment supported by district court's finding of several factors including that defendant had no felony criminal record and his offense was "highly out of character"); *United States v. Tomko*, 562 F.3d 558, 560 (3d Cir. 2009) (affirming probationary sentence based partly on defendant's "negligible criminal history").

That the Guidelines already take into account Morss's lack of criminal history does not mean that it is inappropriate for the Court to vary downward on the same basis. *See United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) ("[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines . . . when a district court applies broader § 3553(a) considerations in granting [a sentencing] variance.").

        **5.**      **Morss's remorse**

A defendant's true remorse, whether exceptional or not, is a valid basis for a downward variance. Indeed, district courts may vary downward based on remorse even where the acceptance of responsibility adjustment under U.S.S.G. §3E1.1 does not apply because the defendant exercised his right to trial. *E.g.*, *United States v. Howe*, 543 Fed. 3d 128, 138 (3d Cir. 2008).

Morss deeply regrets his decision to interfere with law enforcement officers on January 6. He regrets wresting a shield from a police officer. To the extent his contribution to the heave-hoing between protesters and police contributed to the injury and distress of outnumbered law enforcement officers, he offers them his sincere apology. Morss will personally demonstrate remorse at sentencing in his allocution and will leave little doubt about his feelings.

    **B.**    **Avoiding unwarranted sentence disparities (§ 3553(a)(6))**

Section 3553(a) requires courts to fashion a sentence in a way that avoids "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6).

Like Morss, co-defendant **David Lee Judd** was convicted of offenses under §§ 1512(c)(2) and 111(a)(1). Gov't Sentencing Mem., ECF No. 527, p. 18. The government asked

11

for 90 months' incarceration. *Id.*, p. 1. The Court imposed a sentence of 32 months' incarceration, 24 months' supervised release, and $2,000 in restitution.

Here is the government's summary of Judd's conduct on January 6:

David Lee Judd was a leader. He was an instigator, a coordinator, an encourager, and a relentless participant. For nearly an hour and a half at and around the Lower West Terrace tunnel— the epicenter of violence on January 6, 2021—Judd assumed a role of responsibility. He acted as an on-the-ground commander of other rioters, directing, encouraging, and instigating the violence, chaos, and destruction in and around the tunnel as those rioters attempted to breach the line of police officers and enter the Capitol building. Judd spent over an hour using hand gestures to direct rioters into the tunnel, yelling commands to organize rioters, passing items into the tunnel to be used as weapons, assisting rioters exiting the tunnel by washing chemical irritant from their faces, pumping his fist in the air, and providing encouragement to rioters joining the chaos inside the tunnel.

When Judd felt like his coaching and organizing wasn't enough, he joined the efforts to attack police officers. Judd entered the tunnel several times and joined the mob's efforts to break through the police line using coordinated pushes. When pushing did not work, **Judd lit a firecracker and threw it at the police line – landing near at least ten police officers.** Judd then brazenly turned and walked out of the tunnel. From there, he did not skip a beat and continued directing rioter traffic inside and around the tunnel for another hour. Finally, the police line gained ground in the tunnel and successfully pushed the rioters out. Still nearby, Judd relentlessly joined the mob for his final effort to collectively push against the line of officers guarding the tunnel.

Gov't Sentencing Mem., ECF No. 527, p. 2 (emboldening added).

CCTV footage captured the firecracker Judd threw at police officers inside the Lower West Terrace "tunnel":



*Figure 16: Screenshot of Capitol surveillance footage showing firecracker flying in the air toward police officers*

Like Morss, Judd participated in the passing of police shields among protesters:



*Figures 8 & 9: Screenshots of surveillance footage and open-source footage showing Judd (red square/circle) chanting "SHIELD WALL!" and passing shields into the tunnel*



*Figure 10: Screenshot of surveillance footage showing Judd (red square) passing a shield into the tunnel*

13

The government's sentencing memorandum here requested that the Court sentence Morss to 109 months' incarceration, in contrast to its 90-month request for Judd. Gov't Sentencing Mem., ECF No. 622. But it makes no effort to compare and contrast Morss's conduct with Judd's, though they are co-defendants convicted of the same offenses and for conduct that occurred at the same place and time. That is because sentencing Morss more severely than Judd would be nonsensical—according to the government's own sentencing arguments. Morss should be sentenced less severely than Judd.

First, the government argued that Judd was a "leader" and a "commander" of the assaults at the tunnel. ECF No. 527, p. 2. It makes no such argument about Morss.

Second, the government contended that Judd "spent over an hour" at the tunnel scene, using "hand gestures to direct rioters into the tunnel, yelling commands to organize rioters, passing items into the tunnel to be used as weapons, assisting rioters exiting the tunnel by washing chemical irritant from their faces, pumping his fist in the air, and providing encouragement to rioters joining the chaos inside the tunnel." ECF No. 527, p. 2. Yet, in contrast, the government acknowledges that Morss spent approximately 15 minutes at the tunnel— less than a quarter of Judd's duration. ECF No. 622, pp. 9-11.

Third, the government argued that Judd's throwing of a firecracker into the tunnel was exceptionally severe conduct. Similar explosives thrown into the tunnel had caused officers to experience "second degree burns and a singed uniform." ECF No. 527, p. 16. In contrast, Morss did not throw projectiles or explosives at law enforcement officers.

The government has not pointed to any fact that makes Morss's criminal conduct more serious than Judd's. Sentencing Morss to over 32 months' incarceration would create an unwarranted sentence disparity.

Although the government requests that the Court sentence Morss to 109 months' incarceration, it argues that "the sentence of co-defendant **Geoffrey Sills** provides a useful comparison"—though that co-defendant was sentenced to 52 months' incarceration. ECF No. 622, p. 27 (emboldening added). In any case, Sills is not a useful comparison with Morss.

First, like Judd, Sills spent "over an hour" participating in the tunnel assault. Gov't Sentencing Mem., ECF No. 574, p. 2. Again, that is in contrast to the approximately 15 minutes of participation from Morss. ECF No. 622, pp. 9-11.

Second, Sills perpetrated multiple black letter law assaults on law enforcement. He "threw several pole-like objects at [] officers as they retreated from the West Front." ECF No. 574, p. 2. Sills then used a stolen police baton to "repeatedly strike at multiple officers on the police line." *Id.* In contrast, Morss participated in the "heave-ho" between protesters and law enforcement officers and wrested a shield from an MPD officer. While Morss's conduct is still criminal, it is not nearly so severe as Sills'.

Third, Sills attempted to blind officers by pointing a flashing strobe light at them as they engaged with rioters. ECF No. 574, p. 35. Morss engaged in no conduct of this nature.

Apart from co-defendants, Morss asks the Court to take notice of the following January 6 sentences on the § 1512(c)(2) offense:

- *U.S. v. Paul Hodgkins*, 21-cr-188-RDM: 8 months' incarceration;

- *U.S. v. Matthew Miller*, 21-cr-75-RDM: 33 months' incarceration (also involved § 111(a)(1) offense);

- *U.S. v. Richard Michetti*, 21-cr-232-CRC: 9 months' incarceration;

- *U.S. v. Hunter Seefried*, 21-cr-287-TNM: 24 months' incarceration;

- *U.S. v. Christine Priola*, 22-cr-242-TSC: 15 months' incarceration;

- *U.S. v. Dustin Thompson*, 21-cr-161-RBW: 36 months' incarceration;
- *U.S. v. Joshua Hughes*, 21-cr-106-CKK: 38 months' incarceration;
- *U.S. v. Matthew Wood*, 21-cr-223-APM: 12 months' home detention;
- *U.S. v. George Tenney*, 21-cr-640-TFH: 36 months' incarceration;
- *U.S. v. William Reid*, 21-cr-316-DLF: 37 months' incarceration;
- *U.S. v. Allan Frederick*, 21-cr-64-CKK: 21 months' incarceration;
- *U.S. v. John Andries*, 21-cr-93-RC: 12 months' incarceration;
- *U.S. v. James Rahm*, 21-cr-150-TFH: 12 months' incarceration;
- *U.S. v. Andrew Hernandez*, 21-cr-445-CKK: 18 months' incarceration;
- *U.S. v. Christopher Moynihan*, 21-cr-226-CRC: 21 months' incarceration;
- *U.S. v. Joshua Haynes*, 21-cr-594-TSC: 32 months' incarceration;
- *U.S. v. Kevin Seefried*, 21-cr-287-TNM: 36 months' incarceration;
- *U.S. v. Anthony Puma*, 21-cr-454-PLF: 9 months' incarceration.

As to the § 111(a)(1) offense, Morss asks the Court to consider the following sentences imposed in other January 6 cases. Consider *United States v. Mark Leffingwell*, 21-cr-5-ABJ (D.D.C. 2021). Leffingwell punched two U.S. Capitol Police officers in the head. *Leffingwell*, 21-cr-5-ABJ, ECF No. 31, p. 2. That was after he posted himself at a Capitol entrance and encouraged others to join him in his "efforts to assault the Capitol." *Id.* Leffingwell pled guilty to assaulting law enforcement officers under § 111(a). Judge Jackson imposed a sentence of six months' incarceration.

The sentence requested by Morss here—24 months' incarceration (or less)—has been imposed many times in § 111(a)(1) cases concerning January 6: *U.S. v. Creek*, 21-cr-645-DLF; *U.S. v. Willden*, 21-cr-423-RC; *U.S. v. Sargent*, 21-cr-258-TFH; *U.S. v. Young*, 21-cr-617-DLF;

16

*U.S. v. Hernandez*, 21-cr-42-CRC; *U.S. v. Dickinson*, 21-cr-649-JEB; *U.S. v. Mehaffie*, 21-cr-40-TNM; *U.S. v. Eckerman*, 21-cr-623-CRC.

    **C.    The seriousness of the offense and deterrence (§ 3553(a)(2))**

The Court must consider "the need for the sentence imposed . . . to reflect the seriousness of the offense" and to "afford adequate deterrence to criminal conduct" and to "protect the public from further crimes of the defendant." § 3553(a)(2).

For spontaneous actions that occurred over the span of little over an hour, Morss's criminal record now includes three federal felony convictions. As a result, throughout his life he will struggle to achieve career goals. He has spent nearly 24 months in jail awaiting trial and sentencing. Morss has served hard time: guards abused him in jail. The government has adduced no evidence to suggest that these penalties are insufficient to achieve specific deterrence in a young man with no criminal history, much less that 109 months' incarceration is "not greater than necessary to comply with the purposes of [§ 3553(a)]. . ." § 3553(a).

Morss did not direct the crowd to the Capitol Building. He had no preconceived plan to enter the Capitol himself. The crowd turned into a mob which then led to a riot in the shadow of the Capitol Building. This had never happened before in its long history. Morss did not whip up the mob. Nor did he foresee one forming. Like hundreds of others in the area, he engaged in criminal conduct in an unprecedented scene of chaos. Morss has no history of seeking out and inflaming riots or political extremism.

This case has already turned Morss's life upside down. The government's suggestion that these heavy blows are insufficient to deter the one-time, situational crimes Morss committed is nonsense.

**Conclusion**

For all the foregoing reasons, Morss respectfully requests a sentence not greater than 24 months' incarceration.

Dated: May 17, 2023                    Respectfully submitted,

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway
Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorney for Robert Morss*

**Certificate of Service**

I hereby certify that on the 17th day of May, 2023, I filed the foregoing submission with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway
Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorney for Robert Morss*